UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

```
                              :
ALBERT M. JACKSON, JR.,       :
         Plaintiff,           :
                              :   Civil No. 3:19-cv-983 (AWT)
     v.                       :
                              :
COOKS, et al.,                :
         Defendants.          :
                              :
```

## INITIAL REVIEW ORDER

The plaintiff, Albert M. Jackson, Jr., currently incarcerated at Garner Correctional Institution ("Garner") in Newtown, Connecticut, filed this action pro se, pursuant to 42 U.S.C. § 1983. The plaintiff lists eleven defendants in his Complaint, Commissioner Cooks, Warden Corcella, former Commissioner Scott Semple, former Warden Henry Falcone, Director of Engineering Steven Link, former Director of Engineering David Batten, Nurse David Guy, Dr. Gerald Velletta, former Warden/Commissioner James Dzurenda, former Commissioner Leo Arnone, and Nurse Ginger. The plaintiff alleges that the defendants caused him to be exposed to unsafe levels of radon gas at Garner. He seeks damages and injunctive relief. The Complaint was received on June 24, 2019, and the plaintiff was granted permission to proceed in forma pauperis in this action on June 28, 2019.

Under section 1915A of title 28 of the United States Code, the court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.  Id.  This requirement applies both when the plaintiff pays the filing fee and when he proceeds in forma pauperis.  See Carr v. Dvorin, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam).

In reviewing a pro se complaint, the court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]."  Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007).  Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief.  Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007).

Conclusory allegations are not sufficient.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.  "'A document filed pro se is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'"  Boykin v. KeyCorp., 521 F.3d 202, 214 (2d Cir. 2008) (quoting Erickson v. Pardus,

2

551 U.S. 89, 94 (2007)).  However, notwithstanding this liberal interpretation, a <u>pro</u> <u>se</u> complaint will not survive dismissal unless the factual allegations meet the plausibility standard. <u>See, e.g.</u>, <u>Fowlkes v. Ironworkers Local 40</u>, 790 F.3d 378, 387 (2d Cir. 2015).

## I.   **Factual Allegations**

The plaintiff is a Massachusetts-sentenced inmate confined in Connecticut at Garner Correctional Institution ("Garner") under the Interstate Compact.  ECF No. 1, ¶ 8.  He has been confined at Garner for more than twenty years.  <u>Id.</u>, ¶7.

Radon is a tasteless, odorless, colorless gas that derives from the decay of uranium found in most soils as well as in rocks and water.  <u>Id.</u>, ¶¶ 62-63.  Because radon cannot be detected through the senses, the plaintiff was dependent on the defendants to disclose that inmates at Garner were exposed to radon on a daily basis.  <u>Id.</u>, ¶¶ 64-65.  Radon particles attach themselves to dust particles that are then inhaled.  <u>Id.</u>, ¶ 68. The plaintiff's housing unit had a significant problem with visible dust particles.  <u>Id.</u>, ¶ 69.

Radon testing was performed at Garner in December 2013 and January 2014.  <u>Id.</u>, ¶ 49.  Installation of a radon mitigation system was completed in October 2014.  It served only those areas where testing showed excessive radon levels.  <u>Id.</u>, ¶ 32. The plaintiff's housing unit was not tested.  <u>Id.</u>, ¶ 33.  The

Department of Correction permitted Garner employees to file Worker's Compensation claims for radon exposure regardless of the length of exposure.  Id., ¶ 16.

After submitting several medical requests, the plaintiff was seen on January 3, 2019 by Nurse David Guy.  The plaintiff stated he was suffering from a severe headache and had a temperature of 102 degrees.  He experienced a dramatic weight loss of 70 pounds in a year and was coughing up blood.  Id., ¶ 8.  Nurse Guy gave the plaintiff aspirin for his headache and put him on the list to see Dr. Velletta.  He was not seen.  Id., ¶ 9.

On April 12, 2019, the plaintiff was coughing up blood and experiencing flu-like symptoms and a severe headache. Correctional staff contacted the medical unit and Nurse Ginger directed the plaintiff to come to the medical unit for evaluation.  The plaintiff's temperature was 100.2 degrees.  He received medication for his cough and was told that he would be put on the list to see the doctor as soon as possible.  Several weeks passed without the plaintiff being seen by a doctor.  The plaintiff submitted a medical request form seeking a chest x-ray and treatment for possible radon exposure.  The reviewer reported that Dr. Velletta said there was no test to detect radon exposure in humans.  Id.

4

## II.  **Analysis**

The plaintiff states that he brings this action pursuant to
42 U.S.C. §§ 1983, 1985(3), 1986, and 1988 for violation of his
rights under the Eighth and Fourteenth Amendments.  He also
asserts state law tort claims for negligence, intentional
infliction of emotional distress, and assault and battery.

The plaintiff asserts three federal claims.  First, he
contends that the defendants were deliberately indifferent to
his health and safety by housing him at Garner when they knew
about the high levels of radon in the facility.  Second, he
alleges that defendants Semple, Dzurenda, and Falcone deprived
him of his right to pursue this matter through the institutional
grievance procedure and with the Connecticut Claims Commission
by failing to inform him of the radon exposure.  Third, the
plaintiff alleges that defendants Guy, Ginger, and Velletta were
deliberately indifferent to his medical needs by failing to
treat his symptoms of radon exposure.

### A.  **Defendants Dzurenda and Arnone**

The limitations period for filing a section 1983 action in
Connecticut is three years.  Thompson v. Rovella, 734 F. App'x
787, 788-89 (2d Cir. 2018); see also Lounsbury v. Jeffries, 25
F.3d 131, 134 (2d Cir. 1994) (analyzing available state
limitations periods and determining that appropriate limitations

period for section 1983 actions filed in Connecticut is three
years).

The plaintiff alleges that defendant Arnone was the
Commissioner of Correction from 2010 until 2013, and defendant
Dzurenda was Warden at Garner from 2005 through 2009, Deputy
Commissioner for Operations from July 2010 through April 2013,
and Commissioner from April 2013 until August 2014.  He does not
allege that either defendant was responsible for the conditions
at Osborn or took any actions after their terms of office
expired.  All terms of office expired at least five years before
the plaintiff commenced this action in June 2019.  Accordingly,
all claims against defendants Arnone and Dzurenda are dismissed
as time-barred.

>    B.    **Conditions of Confinement**

An inmate may prevail on an Eighth Amendment claim based on
unconstitutional conditions of confinement "only where he proves
both an objective element——that the prison officials'
transgression was 'sufficiently serious'——and a subjective
element—that the official acted, or omitted to act, with a
'sufficiently culpable state of mind,' meaning with a
'deliberate indifference to inmate health or safety.'"  Phelps
v. Kapanolas, 308 F.3d 180, 185 (2d Cir. 2001) (quoting Farmer
v. Brennan, 511 U.S. 825, 834 (1994)).  A condition is
objectively serious if it "'pose[s] an unreasonable risk of

serious damage to [a prisoner's] future health.'"  Id. (quoting

Helling v. McKinney, 509 U.S. 25, 32 (1993)).  Thus, the

'"objective component relates to the seriousness of the injury."

Davidson v. Flynn, 32 F.3d 27, 29 (2d Cir. 1994).

To establish the subjective component, a plaintiff must

allege that prison officials knew "of and disregard[ed] an

excessive risk to inmate health or safety," that is, they were

"aware of facts from which the inference could be drawn that a

substantial risk of serious harm exist[ed], and … dr[e]w that

inference."  Phelps, 308 F.3d at 185-86.  An inmate may state an

Eighth Amendment claim based on allegations that prison

officials, with deliberate indifference, exposed him to an

unsafe condition that poses an unreasonable risk of serious harm

to his future health.  Helling, 509 U.S. at 34-35.

The plaintiff alleges that he has been exposed to radon for

more than twenty years and that the defendants were aware of the

danger of radon exposure for many years but failed to address

it.  He alleges that he suffers severe headaches and coughs up

blood, symptoms which he attributes to radon exposure.  The

court considers these allegations sufficient at this time to

state a plausible conditions of confinement claim.

C.  **Access to Courts**

The plaintiff contends that defendants Semple and Falcone

withheld information about radon levels thereby preventing him

from exercising his administrative remedies, a prerequisite to filing an action with the Claims Commission.

To state a claim for denial of access to the courts, the plaintiff must demonstrate that the defendants acted deliberately and maliciously and that he suffered an actual injury.  See Lewis v. Casey, 518 U.S. 343, 353 (1996).  To establish an actual injury, the plaintiff must allege facts showing that the defendants took, or were responsible for, actions that hindered his efforts to pursue a legal claim, prejudiced one of his existing actions, or otherwise actually interfered with his access to the courts.  See Monsky v. Moraghan, 127 F.3d 243, 247 (2d Cir. 2002).

The plaintiff alleges that defendants Falcone and Semple withheld information about the presence of radon at Garner so that, when he attempted to file a grievance, the grievance was denied as untimely.  He further alleges that he cannot file a claim with the Connecticut Claims Commission unless he first exhausts his administrative remedies.  Construing the allegations in the light most favorable to the plaintiff, as the court must on initial review, the court concludes that the plaintiff states a plausible claim for denial of access to the courts.

D.   **Deliberate Indifference to Medical Needs**

The plaintiff asserts claims for deliberate indifference to medical needs against Nurses Guy and Ginger and Dr. Velletta. Deliberate indifference to serious medical needs occurs when an official knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.  Harrison v. Barkley, 219 F.3d 132, 137-38 (2d Cir. 1998) (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994)).  To state a claim for deliberate indifference to serious medical needs, the plaintiff must allege facts showing both that his medical need was serious and that the defendants acted with a sufficiently culpable state of mind.  See Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003) (citing Estelle v. Gamble, 492 U.S. 97, 105 (1976)).

Objectively, the alleged deprivation must be "sufficiently serious."  Wilson v. Seiter, 501 U.S. 294, 298 (1991).  The condition must be "one that may produce death, degeneration, or extreme pain."  See Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation marks omitted).  Subjectively, the defendants must have been actually aware of a substantial risk that the plaintiff would suffer serious harm as a result of their conduct.  See Salahuddin v. Goord, 467 F.3d 263, 280-81 (2d Cir. 2006).  Negligence, however, does not rise to the level of deliberate indifference and is not cognizable under section

9

1983.  See id. at 280.  Nor does a disagreement over the
treatment provided show deliberate indifference.  See Wright v.
Rao, 622 F. App'x 46, 47 (2d Cir. 2015) (citing Chance v.
Armstrong, 143 F.3d 698, 703 (2d Cir. 1998)).

The plaintiff alleges that exposure to radon gas has caused
him to experience severe headaches and flu-like symptoms and to
cough up blood.  The court will assume, for purposes of this
order only, that the plaintiff has a serious medical need.

The plaintiff alleges that he saw each defendant once.  The
plaintiff alleges that defendant Guy gave him aspirin for his
headache and said he would put the plaintiff on the list to see
a doctor.  The plaintiff attaches to his Complaint, a copy of an
Inmate Request form dated May 13, 2019.  ECF No. 1-1 at 7.  In
the Request, the plaintiff states that, although defendant Guy
said that the plaintiff would be seen the following day, i.e.,
in January 2019, he did not see Dr. Velletta until May 13, 2019,
and the doctor told the plaintiff that there were no records of
any treatment by defendant Guy.  The plaintiff alleges no facts
suggesting that the failure to document the January 2019 visit
was anything more than negligence.  As negligence is not
cognizable under section 1983, the deliberate indifference claim
against defendant Guy is dismissed.

The plaintiff saw Dr. Velletta on May 13, 2019.  He was
prescribed antibiotics.  ECF No. 1-1 at 7.  The only other

reference to Dr. Velletta is that when the plaintiff requested testing for radon exposure and a chest x-ray, a medical staff person told him that Dr. Velletta said there was no test for human exposure to radon.  ECF No. 1 ¶ 9.  The plaintiff alleges no facts suggesting that Dr. Velletta failed to provide treatment.  Nor does he allege that he requested a chest x-ray from Dr. Velletta.  Even if he had, the decision to provide medication and not a chest x-ray at that time is merely a disagreement over treatment which is not cognizable under section 1983.  Thus, the plainitff fails to state a cognizable claim against Dr. Velletta.

Finally, the plaintiff alleges that defendant Ginger gave him medication for his cough and put him on the list to see a doctor.  Again, the allegations show that defendant Ginger provided treatment and referred him to the doctor.  Thus, she was not deliberately indifferent to the plaintiff's medical needs.

The claims for deliberate indifferent to a serious medical need are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

**E.   Fourteenth Amendment**

Although the plaintiff cites the Fourteenth Amendment as a source for his claims, he alleges no facts to support a denial of due process under the Fourteenth Amendment.  The only allegation relating to process is the plaintiff's claim that he

11

was denied access to the grievance procedures because the defendants concealed the fact of radon exposure from him and then denied his grievance as untimely.

Inmates have no constitutional entitlement to grievance procedures, to receive a response to a grievance, or to have a grievance processed properly.  See Riddick v. Semple, 731 F. App'x 11, 13 (2d Cir. 2018) (claim relating to grievance procedures "confused a state-created procedural entitlement with a constitutional right"; "neither state policies not 'state statutes … create federally protected due process entitlements to specific state-mandated procedures'") (quoting Holcomb v. Lykens, 337 F.3d 217, 224 (2d Cir. 2003)).  As the plaintiff has no constitutionally protected right to file a grievance, his Fourteenth Amendment claim is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

Further, although the Second Circuit has not held that denial of access to or interference with prison grievance procedures is cognizable as a violation of a constitutionally protected right, such as the right to petition the government for redress of grievances, district courts considering the issue have held that it does not.  See Lopez v. McGill, No. 3:08-CV-1931(CSH), 2009 WL 179787, at *5-6 (D. Conn. Jan. 31, 2009) (denial of access to, or violation of, grievance procedures does not violate constitutionally protected right such as right to

12

petition government for redress of grievances) (citing cases).

**F.    Claims under 42 U.S.C. §§ 1985(3), 1986 & 1988**

The plaintiff references 42 U.S.C. §§ 1985(3), 1986, and 1988 as bases for his claims.  The Complaint fails to allege facts to support a cognizable claim under any of these statutes.

Section 1985(3) prohibits conspiracies motivated by racial or otherwise class-based invidious discriminatory animus.  Iqbal v. Hasty, 490 F.3d 143, 176 (2d Cir. 2007), rev'd on other grounds sub nom. Ashcroft v. Iqbal, 556 U.S. 62 (2009).  Section 1985(3) may not be construed as a "general federal tort law"; it does not provide a cause of action based on the denial of due process or any other constitutional right.  Griffin v. Breckenridge, 403 U.S. 88, 101-02 (1971).  The plaintiff cites section 1985(3) in his introductory paragraph but alleges no facts supporting a racial or class-based conspiracy in his complaint.  Thus, he fails to state a plausible section 1985(3) claim.

Section 1986 provides no substantive rights; it merely provides a remedy for the violation of section 1985.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 222 n.28 (1970) (Brennan, J., concurring in part and dissenting in part).  Thus, a prerequisite for a section 1986 claim is a cognizable section 1985 claim.  Brown v. City of Oneonta, 221 F.3d 329, 341 (2d Cir. 2000 overruled in part on other grounds by Gonzaga Univ. v.

13

Doe, 536), U.S. 273 (2002).  As the plaintiff has not asserted a plausible section 1985 claim, he cannot assert a cognizable section 1986 claim.

Section 1988(a) provides that the district courts shall exercise their jurisdiction over civil rights cases in conformity of federal law where appropriate or state law.  This section does not provide an independent cause of action.  See Moor v. Alameda Cty., 411 U.S. 693, 702-06 (1973).  Section 1988(b) provides for award of attorney's fees.  As a pro se litigant, the plaintiff is not entitled to attorney's fees under section 1988.  See Kay v. Ehrler, 499 U.S. 432, 435 (1991).

All claims under sections 1985(3), 1986, and 1988 are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### G.    State Law Claims

The plaintiff asserts state law claims for negligence, intentional infliction of emotional distress, and assault and battery.

First, the court notes that the defendants are protected by sovereign immunity from all state law claims for damages asserted against them in their official capacities.  See Castillo v. Hogan, No. 3:14cv1166(VAB), 2016 WL 706167, at *5 (D. Conn. Feb. 22, 2016) ("The doctrine of sovereign immunity protects state officials and employees from lawsuits resulting from performance of their duty.") (quoting Hultman v.

14

Blumenthal, 67 Conn. App. 613, 620, 787 A.2d 666, 672, <u>cert.</u>
<u>denied</u>, 259 Conn. 929, 793 A.2d 253 (2002)).

State employees also are protected from suits for
negligence. <u>See</u> Conn. Gen. Stat. § 4-165 ("No state officer or
employee shall be personally liable for damages or injury, not
wanton or reckless or malicious, caused in the discharge of his
duties or within the scope of his employment."). As the
defendants are protected from liability for damages by statute,
any supplemental state law claim for negligence must be
dismissed. All state law claims against the defendants in their
official capacities and all state law negligence claims against
them in their individual capacities are dismissed because they
seek "monetary relief from a defendant who is immune from such
relief." 28 U.S.C. § 1915A(b)(2).

The plaintiff brings a claim for assault and battery.

> In Connecticut, "civil assault is defined as 'the
> intentional causing of imminent apprehension of
> harmful or offensive contact with another.'" <u>Germano</u>
> <u>v. Dzurenda</u>, 09 Civ. 1216(SRU), 2011 WL 1214435, at
> *22 (D. Conn. Mar. 28, 2011) (quoting <u>Dewitt v. John</u>
> <u>Hancock Mutual Life Ins. Co.</u>, 5 Conn. App. 590, 594
> (1985)). "[A]n actor is subject to liability to
> another for battery if (a) he acts intending to cause
> a harmful or offensive contact with the person of the
> other or a third person, or an imminent apprehension
> of such a contact, and (b) a harmful contact with the
> person of the other directly or indirectly results."
> <u>Id.</u> (quoting <u>Alteiri v. Colasso</u>, 168 Conn. 329, 334
> n.3 (1975)).

<u>Shand v. Chapdelaine</u>, No. 3:17-cv-1947(JCH), 2018 WL 279980, at

*5 (D. Conn. Jan. 3, 2018).

The plaintiff does not allege that any defendant made a harmful contact with him or took any actions that placed him in imminent apprehension that he would make such contact with the plaintiff.  Thus, he fails to state a cognizable claim for assault and battery.  See Odom v. Matteo, 772 F. Supp. 2d 377, 395 (D. Conn. 2011) ("To establish a claim for assault and battery, plaintiff must prove that defendants applied force or violence to [him] and that the application of force or violence was unlawful.") (citation and quotation marks omitted).  Any state law claim for assault and battery is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

Finally, the plaintiff asserts a state law claim for intentional infliction of emotional distress.  To state such a claim, the plaintiff must show that the defendants intended to inflict emotional distress or knew or should have known that emotional distress would likely result from their conduct, and that the conduct was extreme and outrageous, that the defendants' conduct is the likely cause of the plaintiff's distress, and that his distress was severe.  Gomez v. City of Norwalk, No. 3:15cv1434(MPS), 2018 WL 780213, at *8 (D. Conn. Feb. 8, 2018); Perez-Dickson v. City of Bridgeport, 304 Conn. 483, 526-30, 43 A.3d 69, 100-02 (2012).  Liability for intentional infliction of emotional distress requires conduct

16

"so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Appleton v. Board of Educ. of Town of Stonington, 254 Conn. 205, 210-11 (2000).  For example, the situation generally "is one in which the recitation of the fact to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'"  Id. at 211, 757 A.2d at 1062.

Whether conduct is sufficiently extreme and outrageous is a question, in the first instance, for the court.  Only where reasonable minds could differ, does it become a question for the jury.  Stack v. Perez, 248 F. Supp. 2d 106, 110 (D. Conn. 2003) (citing Johnson v. Cheseborough-Ponds USA Co., 918 F. Supp. 543, 552 (D. Conn.), aff'd, 104 F.3d 355 (2d Cir. 1996)).

The plaintiff alleges that precautions were put in place for prison staff but not inmates and testing and remediation were performed in public and staff areas but not in the housing units.  He further alleges that he has been exposed to excessive amounts of radon for over twenty years and this exposure has caused him severe emotional distress.  Based on these allegations, viewed in the light most favorable to the plaintiff, the court concludes that the plaintiff has sufficiently stated a claim for intentional infliction of

17

emotional distress.

III. **Conclusion**

All claims against defendants Arnone and Dzurenda are
DISMISSED as time barred.  The claims against defendants
Velletta, Guy, and Ginger; all claims pursuant to 42 U.S.C. §§
1985(3), 1986, and 1988; any Fourteenth Amendment claim; and the
state law claim for assault and battery also are DISMISSED.  See
28 U.S.C. § 1915A(b)(1).  All supplemental state law claims for
damages against the defendants in their official capacities and
the state law negligence claim against the defendants in their
individual capacities are DISMISSED pursuant to 28 U.S.C. §
1915A(b)(2).

The conditions of confinement claim will proceed against
defendants Cooks, Corcella, Semple, Falcone, Link, and Batten.
The denial of access to courts claim will proceed against
defendants Semple and Falcone.  The state law claim for
intentional infliction of emotional distress will proceed
against defendants Cooks, Corcella, Semple, Falcone, Link, and
Batten in their individual capacities only.

The court enters the following orders.

(1) **The Clerk shall** contact the Department of
Correction Office of Legal Affairs to ascertain the service
or current work addresses for defendants Cooks, Corcella,
Semple, Falcone, Link, and Batten, mail a waiver of service

of process request packet containing the Complaint to each
defendant at the address provided within **twenty-one (21)
days** of this order, and report to the court on the status
of the waiver request on the thirty-fifth day after
mailing.  If any defendant fails to return the waiver
request, the Clerk shall make arrangements for in-person
service by the U.S. Marshals Service on the defendant in
his individual capacity and the defendant shall be required
to pay the costs of such service in accordance with Federal
Rule of Civil Procedure 4(d).

(2)  **The Clerk shall** prepare a summons form and send
an official capacity service packet to the U.S. Marshal
Service.  The U.S. Marshal is directed to effect service of
the complaint on defendants Cooks, Corcella, Semple,
Falcone, Link, and Batten in their official capacities at
the Office of the Attorney General, 55 Elm Street,
Hartford, CT 06141, within **twenty-one (21) days** from the
date of this order and to file a return of service within
thirty (30) days from the date of this order.

(3)  **The Clerk shall** send the plaintiff a copy of this
order.

(4)  **The Clerk shall** send a courtesy copy of the
Complaint and this order to the Connecticut Attorney

General and the Department of Correction Office of Legal
Affairs.

(5)   The defendants shall file their response to the
complaint, either an answer or motion to dismiss, within
**sixty (60) days** from the date the waiver form is sent.   If
they choose to file an answer, they shall admit or deny the
allegations and respond to the cognizable claim recited
above.   They also may include all additional defenses
permitted by the Federal Rules.

(6)   Discovery, pursuant to Federal Rules of Civil
Procedure 26 through 37, shall be completed within **seven
months (210 days)** from the date of this order.   Discovery
requests need not be filed with the court.

(7)   All motions for summary judgment shall be filed
within **eight months (240 days)** from the date of this order.

(8)   Pursuant to Local Civil Rule 7(a), a nonmoving
party must respond to a dispositive motion within twenty-
one (21) days of the date the motion was filed.   If no
response is filed, or the response is not timely, the
dispositive motion can be granted absent objection.

(9)   If the plaintiff changes his address at any time
during the litigation of this case, Local Court Rule
83.1(c)2 provides that the plaintiff MUST notify the court.
Failure to do so can result in the dismissal of the case.

The plaintiff must give notice of a new address even if he
is incarcerated.  The plaintiff should write PLEASE NOTE MY
NEW ADDRESS on the notice.  It is not enough to just put
the new address on a letter without indicating that it is a
new address.  If the plaintiff has more than one pending
case, he should indicate all the case numbers in the
notification of change of address.  The plaintiff should
also notify the defendants or the attorney for the
defendants of his new address.

(10) The plaintiff shall utilize the Prisoner Efiling
Program when filing documents with the court.  The
plaintiff is advised that the Program may be used only to
file documents with the court. Local court rules provide
that discovery requests are not filed with the court. D.
Conn. L. Civ. R. 5(f).  Therefore, discovery requests must
be served on the defendants' counsel by regular mail.

(11) The parties must comply with the District of
Connecticut "Standing Order Re: Initial Discovery
Disclosures" which will be sent to the parties by the
court.  The order also can be found at
http://ctd.uscourts.gov/district-connecticut-public-
standing-orders.

It is so ordered.

21

Signed this 15th day of October 2019 at Hartford,

Connecticut.

_____/s/AWT_____
Alvin W. Thompson
United States District Judge